**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SABRINA TURNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-25-987-R |
| | ) |
| CITY OF LAWTON, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Before the Court is the Motion to Dismiss filed by Defendant City of Lawton [Doc. No. 9]. Plaintiff responded [Doc. No. 16] and the City replied [Doc. No. 17]. Also before the Court is Defendant Shelby M. Pepper's Partial Motion to Dismiss [Doc. No. 23], to which Plaintiff responded [Doc. No. 28]. Both Motions are now at issue.

**BACKGROUND**[1]

Plaintiff Sabrina Turner was an inmate at the Lawton City Jail. Compl. ¶ 12. While Plaintiff was incarcerated, Defendant Shelby Pepper, who was a corrections officer for the City of Lawton at the time, allegedly made repeated sexual advances toward her. *Id.* ¶¶ 8, 13. Plaintiff claims Defendant Pepper attempted to engage in sexually explicit conversations with her, showed her favoritism, and walked into the inmate shower area unannounced to see female inmates, and Plaintiff in particular, naked. *Id.* ¶ 13(a)-(e).

---

[1] When reviewing a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "take[s] the facts in the complaint as true . . . and [ ] views such facts in the light most favorable to the plaintiff[.]" *Knellinger v. Young*, 134 F.4th 1034, 1042 (10th Cir. 2025) (internal citations and quotation marks omitted).

1

Plaintiff alleges other Lawton City Corrections Officers, including Defendants John Doe Officers 1-10, witnessed and knew of Pepper's conduct but did nothing to report or address the situation. *Id.* ¶ 14. Plaintiff further states Chief James T. Smith[2] and/or Defendants John Doe Officers 11-20 witnessed and were also aware of Pepper's treatment of Plaintiff but did nothing to address the situation. *Id.* ¶ 16.[3] According to Plaintiff, Pepper's conduct toward her made him a known harm [sic] to Plaintiff and other female inmates, giving rise to a substantial risk of serious harm to Plaintiff through future sexual advances. *Id.* ¶ 17. Despite this, neither Chief Smith nor John Doe Officers 1-20 took any measures to address Pepper's behavior, making her sexual assault by Pepper exceedingly likely. *Id.* ¶¶ 17, 19.

Plaintiff was placed into an isolation cell on August 29, 2024, a development Pepper used to make further sexual advances toward her. *Id.* ¶¶ 20-21. On the evening of September 1, 2024, Pepper approached Plaintiff, who was still in isolation, and told her she was going to clean the inmate showers. *Id.* ¶ 22. While walking Plaintiff to the showers, he ordered her into a storage closet and sexually assaulted her. *Id.* ¶¶ 23-27. Plaintiff then spent ten minutes cleaning the showers, after which Pepper sexually assaulted her again.

---

[2] Chief Smith was formerly a named defendant in this action. However, a notice of his death was filed with this Court [Doc. No. 15] and Plaintiff subsequently voluntarily dismissed all claims against Chief Smith with prejudice [Doc. No. 26]. In the absence of arguments from either party suggesting it do otherwise, the Court will consider Chief Smith's alleged actions/inactions when analyzing Plaintiff's municipal liability claim. *See Burke v. Regalado*, 935 F.3d 960, 998, 1001 (10th Cir. 2019) (analyzing plaintiff's municipal liability claim with respect to former sheriff's actions).

[3] According to the Complaint, Defendants John Doe Officers 1-10 are believed to be corrections officers, division of police, or employees of the City. Compl. ¶ 9. Defendants John Doe Officers 11-20 are believed to be corrections officers, supervisors, commanders, and/or other administrative, division of police, or employees of Defendant City. *Id.* ¶ 10.

2

*Id.* ¶¶ 28-29. One or more of Defendants John Doe Officers 1-10 later informed Plaintiff they knew about the assault but "didn't want to get in the middle of it." *Id.* ¶ 31. Pepper later pleaded guilty to Sexual Battery for the assaults on Plaintiff.[4]

Plaintiff initiated this lawsuit asserting claims pursuant to 42 U.S.C. § 1983 against Defendants Pepper, John Doe Officers 1-10, John Doe Officers 11-20, and the City of Lawton. She also brings a claim for sexual battery against Pepper. The City of Lawton and Pepper have moved to dismiss all or some of Plaintiff's claims against them.

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) is proper when a complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a Rule 12(b)(6) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And while the Court "must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still 'must nudge the claim across the line from conceivable or speculative to plausible.'" *Id.* (quoting *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)). "Mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not suffice." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[4] The Court takes judicial notice of matters of public record in Defendant Pepper's related criminal case. *See State of Okla. v. Shelby Pepper*, No. CF-2024-516 (Dist. Ct. Comanche Cnty. 2024).

3

## DISCUSSION

### I.    Defendant Pepper's Motion to Dismiss

Defendant Pepper moves to dismiss the official-capacity claims Plaintiff asserts against him because they are redundant. "A [§ 1983] suit against individual defendants in their official capacities is essentially the same as a suit against the [municipality]." *Barney v. Pulsipher*, 143 F.3d 1299, 1306 n.4 (10th Cir. 1998) (citations omitted). "[W]here a local governmental entity is sued along with an official of that entity in his or her official capacity, the official capacity claims are subsumed within the claims against the government entity and, therefore, the official capacity claims against individual defendants are properly dismissed as redundant." *London v. Hill*, No. 11-CV-028-GKF-FHM, 2012 WL 529934, at *4 (N.D. Okla. Feb. 14, 2012) (citation omitted). Plaintiff concedes to the dismissal of claims against Pepper in his official capacity. Accordingly, Defendant Pepper's Partial Motion to Dismiss is GRANTED—to the extent Plaintiff asserts claims against Pepper in his official capacity, such claims are DISMISSED.

### II.    The City's Motion to Dismiss

To recover under § 1983, a plaintiff must establish that a person acting under color of state law "violated his constitutional or statutory rights." *Dodds v. Richardson*, 614 F.3d 1185, 1194 (10th Cir. 2010). "[T]he sexual assault of an inmate by a guard is a violation of the inmate's Eighth Amendment rights." *Castillo v. Day*, 790 F.3d 1013, 1018-19 (10th Cir. 2015). Plaintiff alleges, and Defendant does not dispute, that Plaintiff's constitutional rights were violated when Defendant Pepper sexually assaulted her while she was incarcerated at the Lawton City Jail.

In addition to establishing an underlying constitutional violation, to succeed on a § 1983 claim against a local government entity the plaintiff must prove that (1) a government's official policy or custom (2) caused a constitutional injury and (3) the policy was enacted or maintained with the requisite state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). An official policy or custom may take one of the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation and alteration marks omitted).

"To establish the causation element, the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." *Schneider*, 717 F.3d at 770 (quotation omitted). Put another way, "[t]he policy or custom must be 'the moving force behind the injury alleged.'" *Buchanan v. Turn Key Health Clinics, LLC*, No. 22-7029, 2023 WL 6997404, at *8 (10th Cir. Oct. 24, 2023) (unpublished) (quoting *Schneider*, 717 F.3d at 770).

Last, the requisite state of mind is deliberate indifference. "In the municipal liability context, deliberate indifference is an objective standard." *Barney*, 143 F.3d at 1307 n.5.

5

The standard "may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Id.* at 1307. Typically, notice is "established by proving the existence of a pattern of tortious conduct." *Id.* However, deliberate indifference may also "be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction." *Id.* (quotation marks and citation omitted).

With respect to the first element—the existence of an official policy or custom—Plaintiff points to the behavior of Chief Smith, the former Chief of Police of the Lawton Police Department. "[A] municipality is responsible [] for . . . actions taken by final policymakers, whose conduct 'can be no less described as the official policy of a municipality.'" *Whitson v. Bd. of Cnty. Comm'rs*, 106 F.4th 1063, 1066-67 (10th Cir. 2024) (quoting *Seifert v. Unified Gov't of Wyandotte Cnty./Kan. City*, 779 F.3d 1141, 1159 (10th Cir. 2015)). This is so even when the final policymaker's actions do not conform to the municipality's preexisting rules or written policies. *Id.* at 1067 (quoting *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1283, 1287 (10th Cir. 2007) (Gorsuch, J.)).

Whether an individual has final policymaking authority for purposes of establishing liability against a municipality is a question of state law. *See Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995). Defendant argues that because the City of Lawton utilizes the Council/Manager form of government, final policymaking authority for operation of the Jail rests with the Lawton City Council. *See* OKLA. STAT. tit. 11, §§ 10-101, *et seq.*

6

Thus, according to Defendant, Chief Smith lacked final policymaking authority for the operation of the Lawton City Jail and municipal liability cannot be imposed on the City based on his actions or omissions.

The three elements generally used to determine whether an individual is a final policymaker are: "(1) whether the official is meaningfully constrained 'by policies not of that official's own making;' (2) whether the official's decision[s] are final—i.e., are they subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." *Randle*, 69 F.3d at 448 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

"'Authority to make municipal policy may be . . . delegated by an official who possesses such authority.'" *Praprotnik*, 485 U.S. at 124 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). Another court in this district found that although Oklahoma statutory law placed responsibility to operate a detention center on a trust, it did "not definitively answer . . . the question as to whether [a jail administrator] acted as a final policymaker on behalf of" that trust. *Langford v. Grady Cnty. Det. Ctr.*, 670 F. Supp. 2d 1213, 1242 n.32 (W.D. Okla. 2009). In *Langford*, the Court denied the jail administrator's motion for summary judgment, finding the detention center manual, which indicated the administrator developed policies and procedures for the detention center, created a genuine dispute as to whether the administrator had final policymaking authority. *Id.* at *1241-42. *See also Gonzalez v. Comanche Cnty. Facilities Auth.*, No. CIV-24-1022-D, 2025 WL 410088, at *3 n.2 (W.D. Okla. Jan. 13, 2025), *R&R adopted in* 2025 WL 406838 (W.D. Okla. Feb. 5, 2025) (where plaintiff alleged Chief Smith and a corrections officer exercised

final decision making and supervisory duties at Lawton City Jail regarding inmate safety

and creating policies, the court rejected City of Lawton's argument that the officials lacked

policymaking authority and found plaintiff's claims sufficient to survive the pleading stage

because they supported the inference that the City delegated the policymaking decisions).

Defendant neither meaningfully analyzes applicable Oklahoma law nor addresses

the *Randle* test. Though a close case, on this record and at this stage of the proceedings

Plaintiff has plausibly alleged the City of Lawton delegated at least some policymaking

decisions to Chief Smith such that he was a policymaker at the Lawton City Jail. *See*

Compl. ¶ 7 (alleging Chief Smith is responsible for management and operation of the jail

and for implementing and enforcing policies and procedures related to solitary confinement

and inappropriate sexual conduct).[5]

Plaintiff has also adequately alleged Chief Smith's actions and inactions established

an official policy or custom of the municipality which inflicted a constitutional injury upon

Plaintiff. Deliberate indifference requires that a "municipal actor disregarded a known or

obvious consequence of his action." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410

(1997). "A plaintiff must demonstrate that a municipal decision reflects deliberate

indifference to the risk that a violation of a *particular* constitutional or statutory right will

follow the decision." *Id.* at 411 (emphasis added). Plaintiff asserts: "Defendants Smith

---

[5] The Court notes "'municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy *with respect to the action ordered*.'" *Whitson*, 106 F.4th at 1067 (quoting *Beedle v. Wilson*, 422 F.3d 1059, 1068 (10th Cir. 2005)) (emphasis added). At this stage, and in the absence of persuasive argument to the contrary from Defendant, Plaintiff has plausibly alleged Chief Smith had final policymaking authority in the areas of inmate safety and the sexual conduct of corrections officers.

8

and/or John Doe Officers 11-20 reviewed documents, discussed, and/or received details and information in the form of documents, reports, memos, and updates at the Lawton City Jail about the manner in which [] Pepper[] acted towards Plaintiff and how John Doe Officers 1-10 were deliberately indifferent to said conduct." Compl. ¶ 97. And Plaintiff plausibly asserts that despite having this knowledge, Chief Smith chose to do nothing to address the situation or take measures to ensure Plaintiff's safety. *Id.* ¶¶ 16-19, 98. She alleges this failure to take any action made Plaintiff's sexual assault exceedingly likely and ultimately allowed Pepper to sexually assault Plaintiff in violation of her 8th Amendment rights. *Id.* ¶¶ 19, 98-99. At this stage, the Court finds Plaintiff has adequately alleged that the deliberate indifference of Chief Smith to Plaintiff's risk of harm caused Plaintiff's constitutional injury. This is sufficient for her *Monell* claim against the City to survive the pleading stage.

> Of course, [the Court] cannot determine from the face of the [Complaint] whether the plaintiff[] will be able to substantiate [her] *Monell* claim. But "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks and citations omitted)). So [the Court] conclude[s]— given the . . . low bar for surviving a motion to dismiss—the plaintiff[] alleged enough to explore [her] *Monell* claim in the discovery process. *See id.* (observing that "granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice" (quotation marks, alterations, and citation omitted)).

*Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020).

Plaintiff has adequately pleaded that Chief Smith, as a final policymaker of the Jail, was aware of the risk of Plaintiff's sexual assault by Pepper and yet was deliberately

indifferent to such risk, increasing the likelihood of and ultimately resulting in Plaintiff's assault. Defendant City's Motion to Dismiss [Doc. No. 9] is DENIED.[6]

IT IS SO ORDERED this 25th day of June, 2026.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[6] There are many theories pursuant to which a plaintiff may plead *Monell* claims against municipal entities such as the City. Because the Court finds Plaintiff has successfully stated a claim for municipal liability based on the actions of the City's alleged policymaker Chief Smith, the Court need not address her other theories of municipal liability.